

**SO ORDERED.**

**SIGNED this 8 day of April, 2025.**

_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:                                                          CASE NO. 24-03153-5-DMW

255 NORTH FRONT STREET CONDOS, INC.
                                                                CHAPTER 11
            DEBTOR

### ORDER DETERMINING THAT DEBTOR DOES NOT CONSTITUTE A SINGLE ASSET REAL ESTATE ENTITY AND ORDER OVERRULING OBJECTION TO DEBTOR'S SUBCHAPTER V ELECTION

This matter comes on to be heard upon the Objection to the Debtor's Subchapter V Election ("Objection") filed by the United States Bankruptcy Administrator ("BA") on October 11, 2024 and the Response in Opposition to Bankruptcy Administrator's Objection to the Debtor's Subchapter V Election filed by 255 North Front Street Condos, Inc. ("Debtor") on October 24, 2024. The court conducted an initial hearing on November 13, 2024 and a subsequent hearing on February 24, 2025, both in Raleigh, North Carolina. Brian E. Champion, Esq. appeared for the BA,[1] Richard P. Cook, Esq. appeared for the Debtor, William P. Janvier, Esq. appeared in support of the Objection for Jon K Takata Corporation d/b/a Restoration Management Company ("Takata"), a purported creditor of the Debtor, and Jennifer K. Bennington, Esq. appeared as

---

[1] At the initial hearing on November 13, 2024, Brian C. Behr, Esq. appeared as BA.

Subchapter V trustee. Based upon the pleadings, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the court has the authority to hear and determine the matter pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2. The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code ("Code") on September 12, 2024, designating itself as a small business debtor and electing to proceed under Subchapter V of Chapter 11.

3. The Debtor is a "unit owners' association" organized pursuant to the North Carolina Condominium Act, N.C. Gen. Stat. § 47C-1-101 *et seq.* On its schedules of assets filed with the petition, the Debtor listed ownership of a business checking account and accounts receivable in an unknown amount. In addition, the schedules of assets included the common areas ("Property") of condominiums located at 255 North Front Street in Wilmington, North Carolina. Pursuant to the North Carolina Condominium Act, the Debtor is "responsible for causing the common elements to be maintained, repaired, and replaced when necessary and to assess the unit owners as necessary to recover the costs of such maintenance, repair, or replacement." N.C. Gen. Stat. § 47C-3-107(a) (2013). This statute applies to the Property.

4. The Debtor maintains the Property for the benefit of its two members, who own a total of three condominium units, and bills the members for the common expenses and services the Debtor provides. The Debtor asserts that it pays the following expenses related to the Property: electricity; phone, internet, and fire alarm services; general liability insurance; wind and hail

insurance; fire inspection fees; and burglar alarm fees. The Debtor also incurs expenses related to a parking area at the condominium building and accounting and legal fees.

5.  The BA challenges the Debtor's designation as a small business debtor and its related eligibility to proceed under Subchapter V, applicable only to small business debtors. The BA argues that the Debtor should instead be designated as a single asset real estate ("SARE") entity as defined within the Code:

> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

11 U.S.C. § 101(51B). The Code excludes from the definition of "small business debtor" "a person whose primary activity is the business of owning single asset real estate,"[2] and therefore, if the Debtor qualifies as a SARE entity, then the Debtor is ineligible to proceed as a small business debtor under Subchapter V.

## Discussion

### *Burden of Proof*

6.  As a general rule, "[w]hen a party challenges debtor's eligibility to file under a particular chapter of the United States Bankruptcy Code, the debtor carries the burden of establishing such eligibility." *In re Celebration Cottage AB, LLC*, 663 B.R. 846, 849 (Bankr. E.D.N.C. 2024) (quoting *In re Blue*, 630 B.R. 179, 187 (Bankr. M.D.N.C. 2021)).

7.  Despite this general rule, the Debtor asserts that the burden applicable to the SARE provisions of the Code should apply. The Debtor cites cases holding that the "burden of proving that the [property at issue is] subject to the SARE provisions of the Bankruptcy Code is on the

---

[2] 11 U.S.C. § 101(51D)(A).

moving party . . . by a preponderance of the evidence." *In re Yishlam, Inc.*, 495 B.R. 328, 330 (Bankr. S.D. Tex. 2013).

8. The assertion that the Debtor is a SARE debtor is, at its core, a challenge to the Debtor's election to proceed under Subchapter V. *See In re Bridle Path Partners, LLC*, No. BR 23-23960, 2024 WL 86601, at *3 (Bankr. D. Utah Jan. 8, 2024). For that reason, the Debtor has the burden of establishing that it is not a SARE debtor.

*Whether the Debtor Qualifies as a SARE Entity*

9. Three elements must be met in order for a debtor to constitute a SARE entity:

> (1) the asset consists of real property constituting a single property or project, other than residential real property with fewer than 4 residential units, (2) which generates substantially all of the gross income of a debtor who is not a family farmer, and (3) on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

*Celebration Cottage*, 663 B.R. at 849-50.

10. The Debtor does not challenge the first[3] and third elements, and only disputes whether the Property generates substantially all of the Debtor's gross income. The Debtor argues that its income comes not from the Property itself, but instead from the services it provides to its members, who in turn reimburse the Debtor. The Debtor asserts the Property cannot be considered to be generating the Debtor's income, because reimbursement for services generates the income of the Debtor.

11. The BA responds that the only business being conducted by the Debtor is operating the Property, through maintenance of the Property, payment for services related to the Property

---

[3] Although the Debtor does not dispute the first element, the court notes that if distinct commercial activities took place within each condominium unit, then the Debtor may also be able to contest whether the Property constituted a single project with a "common plan or scheme" of use or "in pursuit of a 'common purpose.'" *Celebration Cottage*, 663 B.R. at 850 (quoting *In re Hassen Imports P'ship*, 466 B.R. 492, 507 (Bankr. C.D. Cal. 2012); *Yishlam*, 495 B.R. at 331).

and collection of funds from members. The BA argues that but for the Property, the Debtor would have no income (in the form of reimbursement for services and maintenance), and therefore, the Property generates all of the Debtor's gross income.

12.  The Debtor cites traditional notions of income generated from real property, in the form of rental income or proceeds after a sale, and asserts it receives neither rental nor sale income. Countering the Debtor's limited list of potential forms of income generated from real property, Takata likens the Debtor's collection of funds to the collection of common area maintenance expenses by a lessor under a lease, collected alongside a lessee's rent.

13.  The court agrees with the Debtor that the Debtor's income derives not from the Property, but instead from the services the Debtor provides pursuant to its statutory obligations as a unit owners' association.[4] In examining whether a property generates substantially all of the gross income of a debtor, it is helpful to consider "whether the revenue is the product of entrepreneurial, active labor and effort-and thus is not single asset real estate-or is simply and passively received as investment income by the debtor as the property's owner-and thus is single asset real estate." *In re Club Golf Partners, L.P.*, No. 07-40096-BTR-11, 2007 WL 1176010, at *4 (E.D. Tex. Feb. 15, 2007).

14.  Although the Debtor's services are a result of the condominium project and are arguably similar in nature to common area maintenance services provided under a lease, the revenues and expenses of the Debtor are not driven by the economic and financial return of the lease or sale of the related real estate condominiums. "[T]he statute [§ 101(51B)] uses the verb "generates," denoting that it is the property itself, not the fruit of workers' labor and management's

---

[4] As noted above, and absent certain exceptions inapplicable to the court's analysis, the Debtor "is responsible for causing the common elements to be maintained, repaired, and replaced when necessary and to assess the unit owners as necessary to recover the costs of such maintenance, repair, or replacement." N.C. Gen. Stat. § 47C-3-107(a).

5

services, that is responsible for substantially all of the gross income" of a SARE entity. *Club Golf Partners,* 2007 WL 1176010, at *5. The Property does not generate the Debtor's gross income, and it does not fit within the Code's definition of SARE.

15. The court's determination that the Debtor does not constitute a SARE entity also aligns with the historical understanding of SARE entities, including the impetus behind the Congressional enactment of laws relating to SARE in bankruptcy in the midst of the real estate crisis of the 1990s. The creation of § 101(51B) and the related stay relief provision in 11 U.S.C. § 362(d)(3) within the Bankruptcy Reform Act of 1994 was meant to address scenarios "where the owner of an encumbered building is attempting to avert loss of his building to his major lender who is grossly undersecured, and where there is no real hope that the owner can come forth with a viable confirmable Chapter 11 plan." *In re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr. S.D. Ohio 1995). In contrast, the Debtor is not a party to any consensual lien. The Debtor's primary, disputed creditor, Takata, asserts an unliquidated claim for remediation work performed on the Property. In addition to not qualifying as a SARE entity under the plain language of § 101(51B), the Debtor is not the type of debtor Congress was seeking to regulate when it enacted the Bankruptcy Reform Act of 1994. These amendments were apparently added to address and to restrict the use of this court in resolving what is typically a two-party dispute surrounding single asset real estate matters.

16. The Objection by the BA should be overruled, and the Debtor should be permitted to proceed as a small business debtor under Subchapter V of Chapter 11; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Debtor does not constitute a single asset real estate entity; and

2. The Objection to the Debtor's Subchapter V Election be, and hereby is, overruled.

END OF DOCUMENT